Case 19-1515, Emilio Torres v. Salvatore Vitale, et al. Oral Argument. Not to exceed 15 minutes per side. Mr. Alvarez, please report when ready. Good afternoon, and may it please the court. My name is Robert Anthony Alvarez with the Avanti Law Group. I'm here on behalf of the plaintiff appellant. I would like to reserve five minutes for rebuttal. Your Honor, I would like to begin with addressing the lower court's reasoning behind its decision that the Failover Standards Act preempted the RICO claims made in this case. The lower court stated that because the Failover Standards Act, to which I will refer to as the FLISA from this point forward, requires an employer to... That's fine. That because the act requires an employer to record and maintain records of hours and wages, and that because the allegations made in this case regarding the claims under the RICO are based on the improper recording and in the overtime, that that was sufficient to warrant preemption. However, the claims under the RICO claims made in this case, it wasn't the proper or improper recording of the hours or the wages. It was, in fact, the failure to properly report the wages and to properly pay the taxes. That's part of it. As I understand, you have a claim for unpaid overtime. That's one of your claims, I guess. Yes, there is a wage theft scheme that is... And that would seem to be in the heartland of what the district court's talking about when it says this is mimicking a claim under the act for overtime. And in the district court's view, the Fair Labor Standards Act was the exclusive remedy for that particular... Let's start with that claim. Why is it? Why didn't you bring a... I mean, I have some ideas, but why didn't you bring a claim under that act rather than sort of get more creative with RICO? Well, as is noted in the briefs, there was a Fair Labor Standards Act claim that was brought on behalf of Mr. Torres and a collective class on the basis of the nonpayment of overtime. I will say that I do agree that the wage theft scheme, as outlined in our complaint, if the court decides that the Fair Labor Standards Act would preempt the RICO in any situation, then that claim would more closely follow the judge's reasoning in terms of the fact that it would be duplicitous to allow a claim under the Fair Labor Standards Act. The Fair Labor Standards Act claim was not brought to conclusion. What happened to that? That's still ongoing at this time. In another suit? In another suit, yes. There was a completely separate action that was filed for the overtime wages that we allege were not properly paid. In the district court? In the district court. It's really strange. I mean, that wasn't consolidated? No. And usually when we get a case after final judgment, I mean, there's nothing left for the district court to do as to this transaction and occurrence. Well, again, so they were brought as separate complaints that were filed at separate times and amended at separate times. And so the Fair Labor Standards Act claim proceeds through the court right now, and this case was dismissed on a total of B6. As I mentioned earlier. Very unusual posture for us to get a case piecemeal. I mean, that's really what the final judgment rule is meant to prevent, right? Well, again, we're dealing with two different federal statutes, and I believe that they have different goals. They have different claims and remedies, and that is part of the reason why the argument that I'm making, I believe, should warrant this case to be remanded back to the district court. So what remedy are you seeking under RICO that you could not obtain under the Fair Labor Standards Act? Well, the damages that one can obtain for an employee under the act, we'll say the Fair Labor Standards Act, are unpaid wages and liquidated damages, which are meant to compensate for prejudgment interest, essentially. Intended to compensate prevailing plaintiffs for losses incurred because they did not receive their payments to which they were properly entitled to when they were due. In a Fair Labor Standards Act case, say you have the situation that wages have not been paid. Well, presumably in that situation, Social Security withholding hasn't been made, or payments haven't been made either, the employer's proportion of it. Can you not get that as a remedy in a Fair Labor Standards case? The remedy of what the employer would have owed to pay to Social Security? Is that not available in a MSLA case? No. The only remedy available under the FLSA is the unpaid wages and liquidated damages. Now, presumably, and for practical purposes, when the employer does eventually pay, whether through settlement or judgment, the wages that were owed, there is typically the tax withholdings are paid during that settlement or that judgment. But what we're talking about here is separate and apart from those wages. That payment could remedy to some extent the underpayments as Social Security taxes or payments, but couldn't entirely remedy for some employees that wouldn't necessarily fully remedy that wrong because there could be an effect on number of quarters or whatever. Is that right or wrong? Well, yes. In this case, again, this was a dismissal. Yes, it's wrong or yes, it's right. You are correct, yes. What I wanted to follow up by saying was that this case was dismissed prior to discovery. Had this case proceeded, we would have been able to present evidence that Mr. Torres did, in fact, have to file amended returns and was, in fact, penalized for not having had those taxes withheld prior. He was penalized as if it was his fault. Correct. Now, there is still the ongoing and compounding damages to Mr. Torres and his retirement benefits in that because those benefits were not paid for however many years from the cash payments, he has now lost out on a, and we're being told by our accountants, calculable amount for those nonpayments. Are the retirement benefits at that point in your complaint anywhere? Yes, we did bring that in the complaint. I do not, I cannot point specifically to it at this moment, but it is in the complaint. We mentioned the fact that his Social Security benefits were affected. Okay. Now, we have. That would be a part of the damages you would seek under RICO because you couldn't get that under the Fair Labor Standards Act or you could get it as part of your liquidated damages under the Fair Labor Standards Act. We're seeking it under RICO because we cannot obtain that benefit, that remedy under the Fair Labor Standards Act. The Fair Labor Standards Act and the liquidated damages provision sometimes, the liquidated damages provision is simply and solely to compensate the employee for not having had access to that money for that period of time. That's it. It's basically a prejudgment interest. It is not to cover, was not intended to cover every potential situation such as this one where the employees have suffered, Mr. Torres has suffered to Social Security benefit and the penalties that he received for the withholdings not having been paid properly and on time. What are the damages you're seeking for the workers' compensation insurance scheme that would be available under RICO but not under the Fair Labor Standards Act? Let me be clear. The tax penalties and any damages flowing from that and Social Security benefits are what we're seeking in damages for all of them. Okay. So where does the workers' compensation insurance scheme fit into all of this? What remedy for that? It's the same remedy. It's just a scheme that helped further the underlying scheme of limiting the employer's tax liability. But what remedy are you seeking for that? We're seeking, again, that he be compensated for the tax liabilities and the Social Security benefits that were harmed. How does the employee have some sort of tax liability or harm from the workers' compensation insurance scheme? Well, so the workers' compensation scheme simply furthered the underlying tax scheme. So it was one more method that the employer was using to solidify its original and main scheme of paying less in taxes by reporting less income. I see this as if we should reverse the district court. It would seem to me like that there are a lot of issues that the district court would initially have to deal with down the road. I think what Judge Bush is asking you about is really . . . I may be misunderstanding. You will correct me, I know if I'm . . . but the connection between your injury and the RICO wrongs that are alleged and whether there has to be a connection between the two for you to proceed. It's sort of a standing issue. It's sort of a . . . Causation. Yeah. And that's tricky in RICO. It implicates a whole lot of things, but it would seem to me that the initial issue is really the subject of your appeal, which is whether the two causes of action can coexist in any way. That is the underlying issue. That is the decision that the lower court made as to the preemption of the Failover Standards Act over the RICO. I see my time is up. I will return for rebuttal. All right. Mr. Northen. Good afternoon. Ian Northen, Your Honors. Ian Northen from Rhodes McKee on behalf of the appellant appellees, Sam Vitale and Belinda Pearson. Quickly, the trial court judge got it right here. The trial court judge got it right on the preemption issue. There's lots of examples, whether it's just Fair Labor Standards Act being a detailed remedial statute with a careful blend. The court uses a careful blend of rights and enforcement powers. It's not technically a preemption issue, though. No, it's not. It's really an issue of whether causes of action under these two statutes can coexist peacefully. I think that's right. And I prefer that because it's truly not a preemption issue. But when you look at the remedies, you know, Fair Labor Standards Act is designed to displace. The wages and hours disputes, especially with respect to overtime. And so when you focus in on that, I think it completely displaces that. It's got double damages instead of treble damages. The Fair Labor Standards Act, I think, precedes by many years the enactment of RICO, civil RICO. That's right. It's an 80-year-old statute, Your Honor. My client's been in business for just about 60 years as a small restaurant in Grand Rapids. And RICO's been around for just not quite 50 years. And so it was around for 30 years before RICO came about. And when you look at that. And probably the drafters of RICO weren't thinking much about the Fair Labor Standards Act, were they? Well, you know, when RICO was passed, you know, labor was an issue. You know, there was corruption in labor and different things. But I think when they specifically pointed out which labor statutes they wanted to make predicate felonies, they did. The Labor Management Relations Act. They did not include the Fair Labor Standards Act in that. They did not include the failure to withhold to employment taxes. They did not include failure to withhold FICA, FUTA, Medicare, or Social Security. Those are those other two categories. They could have Social Security, all of these schemes. Even Medicare was around at that time, although in its infancy. So Congress, if we give them their due and say they could have carved that out, we need to take it at face value. They didn't do that here. They picked other felonies because that's what the RICO statute was designed to do. It was designed to focus on enterprises, big ticket items. And here we've got a mom and pop shop. Let me ask you, a lot of what you're arguing certainly goes to their claim for unpaid overtime. But why would the same reasoning extend to the failure to withhold, you know, the Social Security stuff and the potential tax liability? Why isn't that something that's outside of this preclusion, for lack of a better term? Sure. I'll take them one at a time if I could. First, RICO is designed to discourage certain types of harm to people or their property. It's not designed to stop harm to the government or to the Leviathan, the big bad, you know, some third party, someone else, some workers' compensation scheme. It's designed, how did my client allegedly harm Mr. Torres? I had a RICO case, criminal RICO, where the harmed parties were state governments. Well, that's not a reason. When the government brings the case, they're operating on behalf of themselves and other governments. But, I mean, this isn't in the statute that it has to be against private parties, is it? No, but it does, if you want to have standing to sue, for an individual to sue. Yeah, but we're not, this goes back to, we're not to the standing part of this yet. It's kind of the tail wagging the dog. I mean, you have to look at the merits, you know, to try and see if they have a remedy there. It depends based on the issues that the district court resolved. Well, the district court looked at something very carefully, and that's it. And Mr. Alvarez touched on it, but there were actually three lawsuits filed against my clients here. Why are we getting one? I mean, this is very strange. The plaintiffs are the masters of their own complaint. We move to dismiss them. The court dismissed the RICO case. Anybody move to consolidate this litigation that arises out of, you know, single series of occurrences? Sure. That goes to one of the challenges, because with Fair Labor Standards Act, you've got a conditional certification for a class. In this case, it was not granted. It was deemed individualized, in part because a third lawsuit was filed for Fair Labor Standards Act retaliation. Now, had I predicted the future, I could have moved to consolidate and try to get rid of all of those. But now with three lawsuits, I left them alone because they had different standards. And so the conditional certification for the Fair Labor Standards Act is different than class certification. One is an opt-in. You know, you have to opt-in to a Fair Labor Standards Act case. Here, the court said there's no conditional cert. These are highly individualized claims specific to Mr. Torres. Is there some alternative means that they should have invoked if they wanted to litigate these Social Security and tax liability issues? Both the IRS and Social Security have hotlines and whistleblower statutes that they could have brought. Those are direct statutes that allow, incentivize. It's almost like a ketan. How does a hotline give you a cause of action? Respectfully. I'm sorry. But this happens. Purportedly, this happens often enough that on the IRS website, under its frequently asked questions, it points you and says, if you don't get a W-2 or if your paycheck is wrong, what do you do? And if it comes to the time to file your taxes and it's still not right, what do you do? One, it tells you about the hotline so you can report it to the government so they can consider pursuing it. Two, you have a private cause of action in that you can be a whistleblower for either Social Security or the IRS. Those things weren't done here. Instead, they said, how was I harmed? Mr. Torres brought this lawsuit, brought these three lawsuits, and said he was somehow harmed in this attenuated, distant future. Now, the IRS specifically says, no, that's not the case. It's not. My client may have separate and independent duties to withhold. It's called mandatory withholding. It's got regulations and procedures for dealing with that. But it's the taxpayer, ultimately, and we cited that case law. The taxpayer's burden on him. His argument is that he was paid in cash. His argument was not that he wasn't paid for all hours worked, but that he was paid some portion of his work in cash. It's his duty. Not a lot in cash. It was just regular time. Didn't get time and a half for overtime. That's right. Straight time in cash. And so that arguably is a Fair Labor Standards Act violation. But as it relates to RICO and the tax code, the duty is on the taxpayer to report those earnings. Now, if his W-2 is wrong. Does this have something to do with whether these two causes of action should be able to be brought? Well, it does in the sense that there is no damage. There is no remedy. Anything that befell upon Mr. Torres is his own fault. His responsibility is to report his taxes. And when he failed to do so, he's got options. And to pay them. And to pay them. And when he didn't do that, that would have put money into the Social Security bucket. That would have put money into the IRS's pocket so that they're not now coming after him, allegedly, for failure to amend or failure to pay. Now, those things could have been attached to a complaint so I could contend with them. They're not part of any complaint here, amended or otherwise. That's why I'm left to speculate. But the IRS says that because he didn't pay to the Social Security Administration, to the IRS, what he was supposed to, he doesn't get to bring a RICO claim? Well, something like that, Your Honor. Now, respectfully, when the Fair Labor Standards Act was passed back in the 30s, it was very common. It doesn't seem to me to have a lot to do with the two causes of action can be brought by the same individual. Well, I don't think they can be brought by the same individual. And this is why. I mean, when you look at the case law that interprets them both, you know, the suggestion is because he was paid something in cash that that creates a RICO violation. And I'm saying there's nothing illegal or unlawful about paying somebody in cash. Arguably, my client, you know, according to these allegations, violated its duties to the tax man or to the Social Security Administration. But it did not do so with respect to Mr. Torres. Mr. Torres has to report and pay his taxes. You know, the idea that you can't pay somebody in cash. Well, the ordinarily way that it's done is through withholding if you're not paying somebody in cash. But there's the other wrong here is that he worked a lot of overtime for which he didn't get paid time and a half. And that's certainly not his own fault. I understand, Your Honor, which is why there's a separate lawsuit right now pending for Fair Labor Standards Act violations. Now, that was not deemed widespread. It was not granted conditional certification. Rather, it was deemed individualized because we allege in that lawsuit that Mr. Torres has to be paid in cash. And so the point there is that that lawsuit is a Fair Labor Standards Act lawsuit. Straight time versus overtime. Yes, maybe no, but it would seem to me that the intermittent nature of Mr. Torres' employment and possibly that of other employees would make it really hard to litigate that in a single collective case. Well, I disagree, Your Honor.  It provides double damages, treble damages if it's willful, and it also provides for attorney's fees. Even if there's one nickel of overtime that's unpaid, arguably you get reasonable attorney's fees. So those are properly incentivized by the Fair Labor Standards Act. RICO is an entirely different scheme, however. That's designed to stop enterprises. Here we've got a mom-and-pop restaurant allegedly conspiring with themselves. You know, the other posture that I'll point out, which occurred after the briefing, was that there were other defendants named, other restaurants. Mr. Vitale's niece, who runs kind of an upscale place the next town over. His son, who runs a nicer, kind of trendier place by the stadium further north. All these other folks were implicated as well. They were dropped for the purposes of this appeal. Those claims allegedly go back 10, 15 years in some cases. The point is the only one that's left is my client. So how is he conspiring with himself, being the owner of the restaurant, the agent of the restaurant? The RICO case says you can't do that. So that's another reason why the trial court had a right in dismissing the case. A narrow legal issue, really. We're not dealing with all the things that you might say in defense of your client down the road. Well, this is why Judge Maloney said there was a failure to state a claim. He looked at the other lawsuits. He looked at this lawsuit as alleged. And when he did so, you have to look at it in context. Taking everything as true, there were no tax returns attached, no penalties and interest attached, no Social Security statement attached. None of those things were attached. I mean, to take Social Security in context, if there were a recovery under the Fair Labor Standards Act, at that time, taxes and withholdings would be taken out. That's how it's done in Fair Labor Standards Act cases across the country. When you settle them or there's a judgment, taxes are taken out in the year that it's received. Now, the cash that Mr. Torres allegedly received, he knew about it. And the RICO cases say you can't have a RICO case when you know about the fraud when you receive it, alleged fraud. And just receiving cash puts him on notice that he should have done something about it right then and there. Now, again, the IRS website talks about the frequently asked questions. This must come up. It's not just ubiquitous to the restaurant industry. Mr. Vitale is not alone here. If he makes a mistake, the remedy is for the taxpayer to say, hey, boss, you got my paycheck wrong. Hey, boss, you got my W-2 wrong. And the IRS has a remedy if you don't do it. If your employer does not comply, it's not to rattle off a RICO lawsuit or several RICO lawsuits, as we're seeing here and as referenced in our briefing. It's to file a form with your tax return that says my W-2 is wrong. But certainly he knows how much cash he received. He can report that. And that's what the IRS says. And so I point that out in context because that's the other category of alleged harm, is that somehow we've hurt him vis-a-vis the tax man. Now, the IRS may very well, after it listens to this transcript, may want to give my client a call. But the point here is whether or not Mr. Torres has a cause of action for RICO. And the case law suggests otherwise. Same thing with workers' comp. There's no allegation. The last question here is a number of district courts, right? Now, the first district court of appeals, the second district court of appeals have adopted the De Silva rationale. The first circuit out of Boston and the second circuit out of Philadelphia, excuse me, out of New York, have adopted the De Silva holding, which tried to talk about that separateness and that distinctness. You don't just have to have a separateness of the enterprise. Again, here there allegedly is not one. It's just one guy running his restaurant and his general manager, his longtime general manager, who he lives with, his girlfriend, Ms. Pearson. So there's no separateness there. There's no separateness as to the injury. I'm sorry. I apologize. But what cases are you talking about? So if you look at De Silva, and De Silva would have picked those up. And let me just get you those citations. Are they in your brief? Let's see. The De Silva case that I'm seeing in your brief is the district court case. It's news to me that there are these circuit cases. So normally it's out of bounds to invoke cases that aren't in your brief and hence that opposing counsel doesn't know you're going to argue about. And we have a procedure for advising the court of supplemental authorities that you intend to rely on. You didn't do that in this case. I did not cite those in my brief. I was responding to your question. I did not submit supplemental authority. I thought our briefing was sufficient. I was responding to your direct question. I'm just saying it may be out of bounds. But quickly, when you – and I'm running out of time, so I'll come back to it and I can provide those citations for the court. But in doing so, again, same thing with the Social Security. Any eventual Fair Labor Standards Act recovery would be paid into the lockbox at that time. But I think it's highly speculative for somebody to suggest that they've got a retirement benefit. In the ERISA context, some of the cases we do cite, Fair Labor Standards Act displaces the ERISA. Time is up. Is there no other questions?  Thank you. Thank you, Your Honors. Let me get to the core. If you told me how much time you were – Five minutes. I didn't write it down. That's okay, five minutes. Let me get to the core of the issue here, whether a claim under the RICO can also be brought by an individual who is also filing a claim under the Fair Labor Standards Act. The lower court, it seemed like their concern was, it looks like we're going to open up the floodgate. Every Fair Labor Standards Act claim will now become a RICO case. I don't believe so. Not every wage in our case will lend itself to a RICO claim. Let me explain. A simple misclassification, an issue with regard to whether an exemption applied or didn't apply, whether to an individual or a class of individuals, I don't believe would lend itself to a RICO case. On the contrary, here in this case, we have an intent to defraud the government, which led to individuals being harmed. There would be a RICO claim every time an employer pays somebody under the table. Yes, if they're paying – That would be a pretty big deal. Yes, exactly. Yes, if they're paying under the table so as to avoid, as in this case – Sub-violations. Yes, so as to avoid tax and increasing their income, their taxable income, that, in my opinion, would lend itself more to a RICO case than a simple misunderstanding of the law. It's misrepresentation of the law versus misrepresentation of fact. If Congress chose to omit violations of the Fair Labor Standards Act as a predicate offense for RICO, why shouldn't we say that that specific omission implies that a more general statute that covers the same kinds of conduct likewise is not meant to be a predicate for RICO? Well, Congress outlined specific predicate acts that it felt would cover what its goal was, and that was to stop organized crime, to stop corruption, to stop bribery. As a matter of fact, Judge Maloney in the lower court, in his opinion, cited to five different areas that the RICO was supposed to cover. The tax scheme, as outlined in the complaint in this case – Let's stay on my question, though. There's this rule of construction that if a general provision and a specific provision speak to the same point, we look to the specific provision in the event of a conflict. This would be sort of analogous to that. Congress omits a very specific statute that deals with the problem that your client basically had. Why shouldn't we say that omission implies that they didn't want to capture this with a much more general offense, like wire or wire fraud? Because including the Fair Labor Standards Act would not have accomplished the same goal as this now. The Fair Labor Standards Act was created to alleviate substandard payment of wages and to ensure that workers were paid an honest day wage for an honest day's work. It did not contemplate anything outside of that realm. It did include a cause of action later on for retaliation, and it did include liquidated damages. Those liquidated damages were to cover the loss of the use of that money for that period of time. The RICO has and creates a completely different cause of action based on fraud or schemes to defraud. Yeah, I know. I mean, the point is it's a much more general way of getting at something specific, and Congress chose not to put that specific thing as a predicate offense. So why should wire fraud be a predicate offense when a violation of this specific act isn't? Doesn't that kind of tell us this is not what Congress had in mind? I do not believe so because they cover two different things. The wire fraud in this context was predicated on misinforming or providing misinformation to the government as to the employer's taxable income so as to avoid tax liability. Your client could have remedied a lot of this himself to some extent. Isn't that fair? Well, could he? That's the question. He received the W-2, as most people do, most workers do. They receive a W-2 from the employer. They take that W-2 down to H&R Block, and they get their taxes done. That's what most people do. Is it fair to say, well, he should have known that all of these other cash payments, after being told, as alleged in the complaint, by his employer that it wasn't taxable, is it fair to say that he should have then reported that at the time? And again, let me remind the court, as I said, he has since then filed his taxes, and he was penalized. And there is no remedy, other than I suppose being a whistleblower to the IRS and hoping that they get to it eventually, for him to be made whole for the Social Security benefits and for the tax withholdings and penalties that he received. Thank you. We appreciate the argument both of you made. We'll consider the case carefully. And I believe that's our last argued case for the afternoon.